ACCEPTED
12-15-00185-CV
TWELFTH COURT OF APPEALS
TYLER, TEXAS
10/9/2015 9:57:54 AM
Pam Estes
CLERK

## No. 12-15-00185-CV

_____

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS
10/9/2015 9:57:54 AM
PAM ESTES
Clerk

## IN THE

## COURT OF APPEALS FOR THE

## TWELFTH DISTRICT OF TEXAS AT TYLER

_____

## In the Matter of

## T.L.G.,

## a juvenile

_____

## On Appeal from Juvenile Cause No. J-15-00007

## In the 2nd Judicial District Court of Cherokee County, Texas

## Sitting as a Juvenile Court

_____

## Brief for Appellee

_____

## ORAL ARGUMENT IS REQUESTED

**ALLEN W. ROSS**
**ATTORNEY AT LAW**
**PO BOX 528**
**JACKSONVILLE, TX 75766**
**903.683.2454 (VOICE)**
**903.683.2472 (TELE-FAX)**
**ATTORNEY FOR THE JUVENILE**
**(COURT-APPOINTED)**
**SBN: 00788324**

# INTERESTED PARTIES

The undersigned counsel of record certifies that the following listed persons have an interest in the outcome of this case. These representations are made in order that the Justices of this Honorable Court may evaluate possible disqualification or recusal.

DANA NORRIS YOUNG
County Attorney, Cherokee County, Texas
Trial Counsel / State of Texas

TREVOR M. ROSE
Asst. County Attorney, Cherokee County, Texas
Appellate Counsel / State of Texas

T.L.G.
Appellee/Juvenile

ALLEN W. ROSS
Trial and Appellate Counsel for the Juvenile

Hon. Dwight L. Phifer
Presiding Judge, 2nd District Court

# TABLE OF CONTENTS

**INDEX OF AUTHORITIES** ...................................................................................iii

**STATEMENT OF THE CASE** ...........................................................................2

**STATEMENT ON ORAL ARGUMENTS** .......................................................2

**ISSUES PRESENTED** ......................................................................................3

**STATEMENT OF FACTS** .................................................................................4

**ARGUMENT** ......................................................................................................5

**PRAYER** ...........................................................................................................18

**CERTIFICATE OF COMPLIANCE WITH TRAP 9.4(i)** ...........................19

**APPENDIX** ........................................................................................................1

   **Order of the Trial Court** ......................................................................1

   **Texas Family Code §51.095** ...............................................................2

   **Texas Family Code §52.025** ...............................................................7

   **Texas Code Criminal Procedure Art. 38.22** ....................................8

# INDEX OF AUTHORITIES

**Cases**

*Amador v. State*, 221 S.W.3d 673 (Tex.Crim.App. 2007)......................................5, 6

*Dancy v. State*, 728 S.W.2d 772 (Tex.Crim.App.1987) ...........................................11

*Dowthitt v. State*, 931 S.W.2d 244 (Tex.Crim.App.1996)...............................10, 11

*Herrera v. State*, 241 S.W.3d 526 (Tex.Crim.App. 2007).....................................5, 6

*In re D.A.R.*, 73 S.W.3d 505, (Tex.App.-El Paso 2002, no pet.)............................ 10

*In re D.J.C.*, 312 S.W.3d 704 (Tex.App.—Houston [1st Dist] 2009, no pet.).8, 9, 10, 11

*Jeffley v. State*, 38 S.W.3d 847 (Tex.App.—Houston [14th Dist] 2001)..............9

*Meadoux v. State*, 307 S.W.3d 408 (Tex.App.-San Antonio 2009), aff'd on other grounds..................................................................................................8

*Meek v. State*, 790 S.W.2d 618 (Tex.Crim.App.1990) ........................................... 10

*Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, (1980) ....................................9

*Romero v. State*, 800 S.W.2d 543 (Tex.Crim.App. 1990) ...........................................5

*Roquemore v. State*, 60 S.W.3d 862, 868 (Tex. Crim. App. 2001).........................9

*Stansbury v. California*, 511 U.S. 318, 114 S.Ct. 1526, (1994)...........................8, 9

*State v. Stevens*, 235 S.W.3d 740 (Tex.Crim.App. 2007)............................................6

*Weide v. State*, 214 S.W.3d 17 (Tex.Crim.App. 2007)...........................................5, 6

**Statutes**

*Texas Code Crim. Proc. Ann*. art. 38.22.........................................................................8

*Texas Family Code* § 51.095..................................................................................7, 16

*Texas Family Code § 52.025*............................................................................... 13

**Other Authorities**

Appellant's Brief ............................................................................................ 16

**No. 12-15-00185-CV**

_____

**IN THE**

**COURT OF APPEALS FOR THE**

**TWELFTH DISTRICT OF TEXAS AT TYLER**

_____

**In the Matter of**

**T.L.G.,**

**a juvenile**

_____

**On Appeal from Juvenile Cause No. J-15-00007**

**In the 2nd Judicial District Court of Cherokee County, Texas**

**Sitting as a Juvenile Court**

_____

**Brief for Appellee**

_____

TO THE HONORABLE JUSTICES OF SAID COURT:

Comes now Appellee, TLG, by and through his attorney of record, ALLEN W. ROSS, and presents for receipt his Appellee Brief in the above styled and numbered cause of action.

1

## STATEMENT OF THE CASE

Appellee adopts by reference the Statement of the Case as contained within Appellant's Brief as being factually correct concerning the nature and procedural history of this case.

## STATEMENT ON ORAL ARGUMENTS

Appellee is of the opinion that oral argument would assist the appellate court in further understanding the nuances, issues, facts and legal arguments that are involved in this case. Therefore, Appellee requests such an opportunity.

Appellee, however, respects the court's determination in this matter, and in the event the court decides that such argument would not be resourceful, Appellee will defer to the court's decision.

## ISSUES PRESENTED

1. THE TRIAL COURT, IN ITS SOUND DISCRETION, WEIGHED THE FACTS, JUDGED THE CREDIBILITY OF THE WITNESSES AND DETERMINED THAT THE STATE'S WITNESS WAS BEING UNTRUTHFUL WHEN TESTIFYING THAT THE JUVENILE WAS "FREE TO LEAVE".  THEREFORE, THE COURT APPROPRIATELY SUPPRESSED THE STATEMENT OF THE JUVENILE MADE TO LAW ENFORCEMENT.

## STATEMENT OF FACTS

Appellee adopts by reference the Statement of the Facts as contained within Appellant's Brief as being factually correct concerning the nature and procedural history of this case and the interrogation of the juvenile with the following exception:

Towards the end of the interview, the child <u>never</u> admitted to engaging in a sexual assault, but rather that he was the <u>victim</u> of a sexual assault. (RR. Vol 2, pg 11).

**ARGUMENT**

## I.    STANDARD OF REVIEW

A trial court's ruling on a motion to suppress is reviewed under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex.Crim.App. 2007).  Appellate courts do not engage in their own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App. 1990). The trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Weide v. State*, 214 S.W.3d 17, 24-25 (Tex.Crim.App. 2007).

A trial court's determination of whether the defendant was in custody presents a mixed question of law and fact. *Herrera v. State*, 241 S.W.3d 520, 526 (Tex.Crim.App. 2007). Therefore, the trial court is given almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application of law to fact questions that turn on an evaluation of credibility and demeanor. *See id*. at 526-27; *Amador*, 221 S.W.3d at 673. But when application of law to fact

5

questions do not turn on the credibility and demeanor of the witnesses, the trial court's rulings are reviewed de novo. *Herrera*, 241 S.W.3d at 527; Amador, 221 S.W.3d at 673.

When reviewing a trial court's ruling on a motion to suppress, appellate courts view the evidence in the light most favorable to the trial court's ruling. *Weide*, 214 11 S.W.3d at 24. When a trial court rules on a motion to suppress without entering findings of fact or conclusions of law, appellate courts assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record. *Herrera*, 241 S.W.3d at 527. The trial court's ruling must be upheld if it is supported by the record and correct under any theory of law applicable to the case. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex.Crim.App. 2007).

II. **THE TRIAL COURT, IN ITS SOUND DISCRETION, WEIGHED THE FACTS, JUDGED THE CREDIBILITY OF THE WITNESSES AND DETERMINED THAT THE STATE'S WITNESS WAS BEING UNTRUTHFUL WHEN TESTIFYING THAT THE JUVENILE WAS "FREE TO LEAVE". THEREFORE, THE COURT APPROPRIATELY SUPPRESSED THE STATEMENT OF THE JUVENILE MADE TO LAW ENFORCEMENT.**

The admissibility of custodial statements made by a juvenile is governed by section 51.095 of the Family Code. See *Texas Family Code.* § 51.095. Subsection 51.095(a)(5) provides that a juvenile's oral statement is admissible if these conditions are satisfied: (1) the statement is made while the child is in the custody of an officer, in a detention facility or other place of confinement, or in possession of the Department of Family and Protective Services; (2) the statement is recorded by an electronic recording device; and (3) at some time before making the statement, "the child is given the warning described by Subdivision (1)(A) by a magistrate, the warning is part of the recording, and the child knowingly, intelligently, and voluntarily waives each right stated in the warning."Id. § 51.095(a)(5). A juvenile's oral statement made as a result of custodial interrogation without the benefit of a

7

magistrate warning is inadmissible at trial. See id. § 51.095(a)(5), (b)(1); see also *Texas Code Crim. Proc. Ann*. art. 38.22 §§ 2, 3.

But "[a] statement of a juvenile that is not the product of custodial interrogation is not required to be suppressed by section 51.095 [.]" *In re D.J.C.*, 312 S.W.3d 704, 712 (Tex.App.—Houston [1st Dist] 2009, no pet.) at 712; see *Meadoux v. State*, 307 S.W.3d 401, 408 (Tex.App.-San Antonio 2009), aff'd on other grounds, 325 S.W.3d 189 (Tex.Crim.App.2010) ("A voluntary oral statement by a juvenile that does not stem from custodial interrogation is admissible, even if the juvenile did not receive the statutory admonishments.").

Custodial interrogation is questioning that is initiated by law enforcement after a person has been taken into custody or otherwise deprived of his freedom in any significant way. See *Stansbury v. California*, 511 U.S. 318, 322, 114 S.Ct. 1526, 1528 (1994); *In re D.J.C.*, 312 S.W.3d at 712 (addressing whether juvenile was in custody for purpose of determining admissibility of confession in juvenile delinquency proceeding). "A custodial interrogation occurs when a defendant is in custody and is exposed 'to any words or

actions on the part of the police … that [the police] should know are reasonably likely to elicit an incriminating response.' "*Roquemore v. State*, 60 S.W.3d 862, 868 (Tex. Crim. App. 2001) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 1689–90 (1980)). A juvenile is in custody if, under the objective circumstances, a reasonable child of the same age would believe his freedom of movement was significantly restricted. *Jeffley v. State*, 38 S.W.3d 847, 855 (Tex.App.—Houston [14th Dist] 2001).

The analysis involves two steps. *In re D.J.C.*, 312 S.W.3d at 712. First, we determine whether there was a formal arrest or restraint of movement to the degree associated with an arrest by examining all of the circumstances surrounding the interrogation. *Stansbury*, 511 U.S. at 322, 114 S.Ct. at 1528–29;, *In re D.J.C.*, 312 S.W.3d at 712. This determination focuses on the objective circumstances of the interrogation, not on the subjective views of either the interrogating officers or the person being questioned. *Stansbury*, 511 U.S. at 322, 114 S.Ct. at 1528–29; *In re D.J.C.*, 312 S.W.3d at 712. "[T]he restriction upon freedom of movement must amount to the degree

associated with an arrest as opposed to an investigative detention." *Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex.Crim.App.1996).

Second, we consider whether, in light of the circumstances, a reasonable person would have felt that he was at liberty to terminate the interrogation and leave. *In re D.J.C.*, 312 S.W.3d at 712. Courts have traditionally considered four factors in making this determination: (1) whether probable cause to arrest existed at the time of questioning; (2) the subjective intent of the police; (3) the focus of the investigation; and (4) the subjective belief of the defendant. Id. Because the custody determination must be based upon the objective circumstances, however, the subjective intent of both the interrogating officers and the person being questioned is irrelevant except to the extent that intent is manifested in words or actions. Id.

A juvenile may be in custody when he is interrogated alone by an armed police officer in an enclosed space. See *In re D.J.C.*, 312 S.W.3d at 713; see also *In re D.A.R.*, 73 S.W.3d 505, 511–12 (Tex.App.-El Paso 2002, no pet.). Being the focus of an investigation alone does not amount to being in custody. *Meek v. State*, 790 S.W.2d 618, 621 (Tex.Crim.App.1990). Neither

does stationhouse questioning, in and of itself, constitute custody. *Dowthitt*, 931 S.W.2d at 255. When the circumstances show that an individual acts upon the invitation or request of the police and there are no express or implied threats that he will be forcibly taken, that person is not in custody. *Dancy v. State*, 728 S.W.2d 772, 778–79 (Tex.Crim.App.1987); *In re D.J.C.*, 312 S.W.3d at 713. "The mere fact that an interrogation begins as non-custodial, however, does not prevent it from later becoming custodial; police conduct during the encounter may cause a consensual inquiry to escalate into custodial interrogation." *Dowthitt*, 931 S.W.2d at 255.

Four general situations may constitute custody: (1) when the suspect is physically deprived of his freedom of action in any significant way, (2) when a law enforcement officer tells the suspect that he cannot leave, (3) when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted, or (4) when there is probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave. See id; In re D.J.C., 312S.W.3d at 713.

1. **Was there a formal arrest or restraint of movement of the juvenile to the degree associated with an arrest.**

It is undisputed that at the time of the interrogation, the juvenile: (1) came to the Jacksonville Police Station at the request of law enforcement; (2) that he did so by his own method of transportation and was not brought to the police station by law enforcement; (3) that he was not in handcuffs, shackles, leg-irons or other formal means of restraint during the interview and (4) that he was told he was not under arrest.

2. **In light of the circumstances, would a reasonable person have felt that he was at liberty to terminate the interrogation and leave.**

**(a)    Did probable cause to arrest exist at the time of questioning?**

Yes.  During direct question by defense counsel, the interviewing officer (hereinafter referred to as "Compton", established that probable cause was developed prior to the interview with the juvenile "after looking at the interviews from the Conroe Police Department, the report that they submitted, and when I talked to Ty." (RR. Vol. 2, pg 12, Ln 7-15).

If the State proffers that probable cause somehow was not developed until the conclusion of the interview, we would further point out that

12

under questioning by defense counsel it was revealed that the officer somehow took the Appellee's outcry to being the victim of a sexual assault as an admission of committing a sexual assault. (RR. Vol. 2, pg 11, Ln 4-17).

**(b)  What was the subjective intent of the police?**

It is clear from the testimony of Compton that the subjective intent of law enforcement was to arrest the Appellee with our without a statement. Regardless of the fact that Compton testified on numerous occasions that the Appellee "was free to leave", it is clear that this was not the case.

Furthermore, it is noteworthy that under examination from the state's attorney, Compton testified that the juvenile was taken to a "designated juvenile processing office" (RR. Vol. 2, pg 18, Ln. 25 – pg. 19, Ln. 1-3).

*Texas Family Code § 52.025.* - DESIGNATION OF JUVENILE PROCESSING OFFICE.

(a)  The juvenile board may designate an office or a room, which may be located in a police facility or sheriff's offices, as the juvenile processing office for the temporary detention of a child taken into custody under Section 52.01. The office may not be a cell or holding facility used for detentions other than detentions under this section.  The juvenile board by written order may prescribe the conditions of the designation and limit the activities that may occur in the office during the temporary detention.

(b)  A child may be detained in a juvenile processing office only for:

    (1)  the return of the child to the custody of a person under Section 52.02(a)(1);

    (2)  the completion of essential forms and records required by the juvenile court or this title;

    (3)  the photographing and fingerprinting of the child if otherwise authorized at the time of temporary detention by this title;

    (4)  the issuance of warnings to the child as required or permitted by this title;  or

    (5)  the receipt of a statement by the child under Section 51.095(a)(1), (2), (3), or (5).

(c)  A child may not be left unattended in a juvenile processing office and is entitled to be accompanied by the child's parent, guardian, or other custodian or by the child's attorney.

(d)  A child may not be detained in a juvenile processing office for longer than six hours.

Without doubt the state wants the trial court to understand that the rules were followed.  However, taking any juvenile to a "designated processing room" only becomes relevant per the language of the statute, for the "temporary detention of a child taken into custody.  This revelation that Compton was attempting to comply with §52.025, further reveals his subjective intent which was to ultimately, and prior to the interview, arrest the Appellee.

14

Compton seems to take great pride in the fact that he allowed the juvenile to leave the interrogation room prior to arrest (RR. Vol. 2 pg, 24, Ln. 4-9; pg. 25, Ln 2-6; pg. Ln. 17-24).   However, the Appellee was arrested *less than one minute after the conclusion of the interview* (RR. Vol. 2 pg, 25, Ln. 2-6).   Although Compton told the Appellee he was free to leave and terminated the interrogation, he immediately arrested the Appellee as soon as he crossed the threshold of the interrogation room (RR. Vol. 2 pg, 26, Ln. 17-24).   Further, in that time period, he had learned nothing new about the case except that Compton formed a mistaken belief that the Appellee had confessed (RR. Vol. 2 pg, 12, Ln. 16-18).   This action further demonstrates Compton's subjective intent and that he intended to arrest the juvenile long before the interview began.

Further, under examination, Compton testified to on multiple occasions – as result of questioning from the state's attorney, Appellee's attorney and the trial judge, that had the Appellee refused to talk to him, he would have gotten a magistrate to warn the Appellee (RR. Vol. 2 pg, 25, Ln. 13-17; pg. 27, Ln. 1-10; pg. 28; Ln 2-6; pg. 28-29).   It was not until

further examination by the trial court, did he finally attempt to "correct" his testimony. (RR. Vol. 2 pg, 28-29.  However, it does not appear that the trial court was completely satisfied with Compton's responses (RR. Vol. 2 pg, 28-32).

**(c)    Who was the sole subject of the investigation?**

The testimony clear establishes that the Appellee was the sole focus of the investigation. (RR. Vol. 2 pg, 14, Ln. 14-16).  Such is further conceded in Appellant's Brief. (Appellant's Brief, pg. 5).

**(d)    What was the subjective belief of the defendant/Appellee?**

There was no testimony as to the subjective belief of the Appellee because he did not testify.

SUMMARY / CONCLUSION

In Texas Family Code §51.095, the Texas Legislature enacted a statute designed (among other things) to (1) protect the liberty interests of juveniles accused of criminal offenses and (2) to protect the integrity of confessions given by those juveniles accused (and presumably guilty of) criminal offenses.

16

It is a statute that employs a check upon law enforcement by the utilization of a neutral magistrate.

The Jacksonville Police Department has developed a unique strategy which can only be interpreted as an effort to circumvent the intent of the Texas Legislature. Arguably, the Jacksonville Police Department is under belief that as long as they simply tell a juvenile he/she is "free to leave" regardless of their true intent, they never have to comply with §52.095. In that this reaches an absurd result, this could <u>never</u> have been the intent of the Legislature. Clearly, the Jacksonville Police Department is not acting in good-faith and within the bounds of established law. Law enforcement is mandated to uphold our laws, not seek creative ways to circumvent them.

The trial court's analysis of this matter focused on the credibility of Compton. The trial court did not believe Compton, and this fact should be accepted by the Appellate Court. The Trial Court's ruling is supported by the record and the law was correctly applied. Therefore, the ruling must be upheld.

## PRAYER

Wherefore, Appellee prays that this Honorable Court affirm the Trial Court's decision suppressing the statement of the Appellee.

**ALLEN W. ROSS**
**ATTORNEY AT LAW**
**PO BOX 528**
**JACKSONVILLE, TX 75766**
**903.683.2454 (VOICE)**
**903.683.2472 (TELE-FAX)**
**SBN: 00788324**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of this brief is being served on the parties or their counsel listed below by Electronic Mail, on October 9, 2015 in compliance with Texas Rule of Appellate Procedure 9.5, to-wit:

trevor@cocherokee.org.

_____
**ALLEN W. ROSS**
Attorney for Appellee

**CERTIFICATE OF COMPLIANCE WITH TRAP 9.4(i)**

I, ALLEN W ROSS, state that I have complied with Texas Rule of Appellate Procedure 9.4(i), to-wit:
FONT:          Segoe UI
SIZE:            14pt
WORD COUNT:   3245

_____
**ALLEN W. ROSS**
Attorney for Appellee

# APPENDIX

# Order of the Trial Court



SECOND JUDICIAL DISTRICT COURT OF TEXAS

**DWIGHT L. PHIFER**
DISTRICT JUDGE

P. O. BOX 287
RUSK, TEXAS 75785
903-683-2236

July 14, 2015

Ms. Dana Young
County Attorney
Cherokee County Courthouse
Rusk, Texas 75785

Mr. Allen Ross
Attorney at Law
P. O. Box 528
Jacksonville, Texas 75766

Re:    Cause No. J15-00007; *In the Matter of Ty Levi Golightly*; In the   Second
       Judicial District Court of Cherokee County, Texas

Counselors:

The Court rules as follows:

1.    The Motion to Suppress is GRANTED   as to statements made during the
      interview with Officer Compton.   Texas courts have delineated a number of
      different tests to determine whether a person is in custody.  After reviewing these
      factors, based upon the objective facts in the record, it appears that the juvenile
      was not actually free to go and was in custody.

2.    The Motion to Suppress is DENIED as to the statement made to Detective
      Franklin.  Section 51.095 b) 1).

*BY ORDER OF THE COURT:*

DWIGHT L. PHIFER
JUDGE PRESIDING

Appendix 1

**Texas Family Code §51.095**

Sec. 51.095. ADMISSIBILITY OF A STATEMENT OF A CHILD. (a) Notwithstanding Section 51.09, the statement of a child is admissible in evidence in any future proceeding concerning the matter about which the statement was given if:

(1) the statement is made in writing under a circumstance described by Subsection (d) and:

(A) the statement shows that the child has at some time before the making of the statement received from a magistrate a warning that:

(i) the child may remain silent and not make any statement at all and that any statement that the child makes may be used in evidence against the child;

(ii) the child has the right to have an attorney present to advise the child either prior to any questioning or during the questioning;

(iii) if the child is unable to employ an attorney, the child has the right to have an attorney appointed to counsel with the child before or during any interviews with peace officers or attorneys representing the state; and

(iv) the child has the right to terminate the interview at any time;

(B) and:

(i) the statement must be signed in the presence of a magistrate by the child with no law enforcement officer or prosecuting attorney present, except that a magistrate may require a bailiff or a law enforcement officer if a bailiff is not available to be present if the magistrate determines that the presence of the bailiff or law enforcement officer is necessary for the personal safety of the magistrate or other court personnel, provided that the bailiff or law enforcement officer may not carry a weapon in the presence of the child; and

Appendix 2

(ii)  the magistrate must be fully convinced that the child understands the nature and contents of the statement and that the child is signing the same voluntarily, and if a statement is taken, the magistrate must sign a written statement verifying the foregoing requisites have been met;

(C)  the child knowingly, intelligently, and voluntarily waives these rights before and during the making of the statement and signs the statement in the presence of a magistrate; and

(D)  the magistrate certifies that the magistrate has examined the child independent of any law enforcement officer or prosecuting attorney, except as required to ensure the personal safety of the magistrate or other court personnel, and has determined that the child understands the nature and contents of the statement and has knowingly, intelligently, and voluntarily waived these rights;

(2)  the statement is made orally and the child makes a statement of facts or circumstances that are found to be true and tend to establish the child's guilt, such as the finding of secreted or stolen property, or the instrument with which the child states the offense was committed;

(3)  the statement was res gestae of the delinquent conduct or the conduct indicating a need for supervision or of the arrest;

(4)  the statement is made:

(A)  in open court at the child's adjudication hearing;

(B)  before a grand jury considering a petition, under Section 53.045, that the child engaged in delinquent conduct; or

(C)  at a preliminary hearing concerning the child held in compliance with this code, other than at a detention hearing under Section 54.01; or

(5)  subject to Subsection (f), the statement is made orally under a circumstance described by Subsection (d) and the statement is recorded by an electronic recording device, including a device that records images, and:

(A)  before making the statement, the child is given the warning described by Subdivision (1)(A) by a magistrate, the warning is a part of the recording, and the child knowingly, intelligently, and voluntarily waives each right stated in the warning;

(B)  the recording device is capable of making an accurate recording, the operator of the device is competent to use the device, the recording is accurate, and the recording has not been altered;

(C)  each voice on the recording is identified; and

(D)  not later than the 20th day before the date of the proceeding, the attorney representing the child is given a complete and accurate copy of each recording of the child made under this subdivision.

(b)  This section and Section 51.09 do not preclude the admission of a statement made by the child if:

(1)  the statement does not stem from interrogation of the child under a circumstance described by Subsection (d); or

(2)  without regard to whether the statement stems from interrogation of the child under a circumstance described by Subsection (d), the statement is:

(A)  voluntary and has a bearing on the credibility of the child as a witness; or

(B)  recorded by an electronic recording device, including a device that records images, and is  obtained:

(i)  in another state in compliance with the laws of that state or this state; or

(ii)  by a federal law enforcement officer in this state or another state in compliance with the laws of the United States.

(c)  An electronic recording of a child's statement made under Subsection (a)(5) or (b)(2)(B) shall be preserved until all juvenile or criminal matters relating to any conduct referred to in the statement are final, including the exhaustion of all appeals, or barred from prosecution.

(d)  Subsections (a)(1) and (a)(5) apply to the statement of a child made:

(1)  while the child is in a detention facility or other place of confinement;

(2)  while the child is in the custody of an officer; or

(3)  during or after the interrogation of the child by an officer if the child is in the possession of the Department of Family and Protective Services and is suspected to have engaged in conduct that violates a penal law of this state.

(e)  A juvenile law referee or master may perform the duties imposed on a magistrate under this section without the approval of the juvenile court if the juvenile board of the county in which the statement of the child is made has authorized a referee or master to perform the duties of a magistrate under this section.

(f)  A magistrate who provides the warnings required by Subsection (a)(5) for a recorded statement may at the time the warnings are provided request by speaking on the recording that the officer return the child and the recording to the magistrate at the conclusion of the process of questioning.  The magistrate may then view the recording with the child or have the child view the recording to enable the magistrate to determine whether the child's statements were given voluntarily.  The magistrate's determination of voluntariness shall be reduced to writing and signed and dated by the magistrate.  If a magistrate uses the procedure described by this subsection, a child's statement is not admissible unless the magistrate determines that the statement was given voluntarily.

Added by Acts 1997, 75th Leg., ch. 1086, Sec. 4, eff. Sept. 1, 1997. Amended by Acts 1999, 76th Leg., ch. 982, Sec. 1, eff. Sept. 1, 1999;  Acts 1999, 76th Leg., ch. 1477, Sec. 1, eff. Sept. 1, 1999;  Acts 2001, 77th Leg., ch. 1297, Sec. 7, eff. Sept. 1, 2001; Acts 2001, 77th Leg., ch. 1420, Sec. 21.001(29), eff. Sept. 1, 2001.
Amended by:

Acts 2005, 79th Leg., Ch. 949 (H.B. 1575), Sec. 5, eff. September 1, 2005.

Acts 2007, 80th Leg., R.S., Ch. 908 (H.B. 2884), Sec. 8, eff. September 1, 2007.

Acts 2011, 82nd Leg., R.S., Ch. 110 (H.B. 841), Sec. 3, eff. May 21, 2011.

Acts 2011, 82nd Leg., R.S., Ch. 1158 (H.B. 2337), Sec. 1, eff. September 1, 2011.

**Texas Family Code §52.025**

Sec. 52.025.  DESIGNATION OF JUVENILE PROCESSING OFFICE.  (a) The juvenile board may designate an office or a room, which may be located in a police facility or sheriff's offices, as the juvenile processing office for the temporary detention of a child taken into custody under Section 52.01. The office may not be a cell or holding facility used for detentions other than detentions under this section.  The juvenile board by written order may prescribe the conditions of the designation and limit the activities that may occur in the office during the temporary detention.

(b)  A child may be detained in a juvenile processing office only for:

(1)  the return of the child to the custody of a person under Section 52.02(a)(1);

(2)  the completion of essential forms and records required by the juvenile court or this title;

(3)  the photographing and fingerprinting of the child if otherwise authorized at the time of temporary detention by this title;

(4)  the issuance of warnings to the child as required or permitted by this title;  or

(5)  the receipt of a statement by the child under Section 51.095(a)(1), (2), (3), or (5).

(c)  A child may not be left unattended in a juvenile processing office and is entitled to be accompanied by the child's parent, guardian, or other custodian or by the child's attorney.

(d)  A child may not be detained in a juvenile processing office for longer than six hours.

Added by Acts 1991, 72nd Leg., ch. 495, Sec. 2, eff. Sept. 1, 1991.  Amended by Acts 1997, 75th Leg., ch. 1086, Sec. 48, eff. Sept. 1, 1997;  Acts 2001, 77th Leg., ch. 1297, Sec. 13, eff. Sept. 1, 2001.

**Texas Code Criminal Procedure Art. 38.22**

Art. 38.22. WHEN STATEMENTS MAY BE USED.

Sec. 1.  In this article, a written statement of an accused means:

(1)  a statement made by the accused in his own handwriting; or

(2)  a statement made in a language the accused can read or understand that:

(A)  is signed by the accused; or

(B)  bears the mark of the accused, if the accused is unable to write and the mark is witnessed by a person other than a peace officer.

Sec. 2. No written statement made by an accused as a result of custodial interrogation is admissible as evidence against him in any criminal proceeding unless it is shown on the face of the statement that:

(a) the accused, prior to making the statement, either received from a magistrate the warning provided in Article 15.17 of this code or received from the person to whom the statement is made a warning that:

(1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;

(2) any statement he makes may be used as evidence against him in court;

(3) he has the right to have a lawyer present to advise him prior to and during any questioning;

(4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning;  and

(5) he has the right to terminate the interview at any time;  and

(b) the accused, prior to and during the making of the statement, knowingly, intelligently, and voluntarily waived the rights set out in the warning prescribed by Subsection (a) of this section.

Sec. 3.  (a)  No oral or sign language statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless:

(1) an electronic recording, which may include motion picture, video tape, or other visual recording, is made of the statement;

(2) prior to the statement but during the recording the accused is given the warning in Subsection (a) of Section 2 above and the accused knowingly, intelligently, and voluntarily waives any rights set out in the warning;

(3) the recording device was capable of making an accurate recording, the operator was competent, and the recording is accurate and has not been altered;

(4) all voices on the recording are identified;  and

(5) not later than the 20th day before the date of the proceeding, the attorney representing the defendant is provided with a true, complete, and accurate copy of all recordings of the defendant made under this article.

(b) Every electronic recording of any statement made by an accused during a custodial interrogation must be preserved until such time as the defendant's conviction for any offense relating thereto is final, all direct appeals therefrom are exhausted, or the prosecution of such offenses is barred by law.

(c) Subsection (a) of this section shall not apply to any statement which contains assertions of facts or circumstances that are found to be true and which conduce to establish the guilt of the accused, such as the finding of secreted or stolen property or the instrument with which he states the offense was committed.

(d) If the accused is a deaf person, the accused's statement under Section 2 or Section 3(a) of this article is not admissible against the accused unless the warning in Section 2 of this article is interpreted to the deaf person by an interpreter who is qualified and sworn as provided in Article 38.31 of this code.

(e) The courts of this state shall strictly construe Subsection (a) of this section and may not interpret Subsection (a) as making admissible a statement unless all requirements of the subsection have been satisfied by the state, except that:

(1) only voices that are material are identified;  and

(2) the accused was given the warning in Subsection (a) of Section 2 above or its fully effective equivalent.

Sec. 4. When any statement, the admissibility of which is covered by this article, is sought to be used in connection with an official proceeding, any person who swears falsely to facts and circumstances which, if true, would render the statement admissible under this article is presumed to have acted with intent to deceive and with knowledge of the statement's meaning for the purpose of prosecution for aggravated perjury under Section 37.03 of the Penal Code.  No person prosecuted under this subsection shall be eligible for probation.

Sec. 5. Nothing in this article precludes the admission of a statement made by the accused in open court at his trial, before a grand jury, or at an examining trial in compliance with Articles 16.03 and 16.04 of this code, or of a statement that is the res gestae of the arrest or of the offense, or of a statement that does not stem from custodial interrogation, or of a voluntary statement, whether or not the result of custodial interrogation, that has a bearing upon the credibility of the accused as a witness, or of any other statement that may be admissible under law.

Sec. 6. In all cases where a question is raised as to the voluntariness of a statement of an accused, the court must make an independent finding in the absence of the jury as to whether the statement was made under voluntary conditions.  If the statement has been found to have been voluntarily made and held admissible as a matter of law and fact by the court in a hearing in the absence of the jury, the court must enter an order stating its conclusion as to whether or not the statement was voluntarily made, along with the specific finding of facts upon which the conclusion was based, which order shall be filed among the papers of the cause.  Such order shall not be exhibited to the jury nor the finding thereof made known to the jury in any manner.  Upon the finding by the judge as a matter of law and fact that the statement was voluntarily made, evidence pertaining to such matter may be submitted to the jury and it shall be instructed that unless the jury believes beyond a reasonable doubt that the statement was voluntarily made, the jury shall not consider such statement for any purpose nor any evidence obtained as a result thereof.  In any case where a

motion to suppress the statement has been filed and evidence has been submitted to the court on this issue, the court within its discretion may reconsider such evidence in his finding that the statement was voluntarily made and the same evidence submitted to the court at the hearing on the motion to suppress shall be made a part of the record the same as if it were being presented at the time of trial.  However, the state or the defendant shall be entitled to present any new evidence on the issue of the voluntariness of the statement prior to the court's final ruling and order stating its findings.

Sec. 7. When the issue is raised by the evidence, the trial judge shall appropriately instruct the jury, generally, on the law pertaining to such statement.

Sec. 8. Notwithstanding any other provision of this article, a written, oral, or sign language statement of an accused made as a result of a custodial interrogation is admissible against the accused in a criminal proceeding in this state if:

(1) the statement was obtained in another state and was obtained in compliance with the laws of that state or this state;  or

(2) the statement was obtained by a federal law enforcement officer in this state or another state and was obtained in compliance with the laws of the United States.

Acts 1965, 59th Leg., vol. 2, p. 317, ch. 722.  Amended by Acts 1967, 60th Leg., p. 1740, ch. 659, Sec. 23, eff. Aug. 28, 1967;  Acts 1977, 65th Leg., p. 935, ch. 348, Sec. 2, eff. Aug. 29, 1977.

Sec. 3(a) amended by Acts 1979, 66th Leg., p. 398, ch. 186, Sec. 4, eff. May 15, 1979;  Sec. 3(d) added by Acts 1979, 66th Leg., p. 398, ch. 186, Sec. 5, eff. May 15, 1979;  Sec. 3 amended by Acts 1981, 67th Leg., p. 711, ch. 271, Sec. 1, eff. Sept. 1, 1981;  Sec. 3(a) amended by Acts 1989, 71st Leg., ch. 777, Sec. 1, eff. Sept. 1, 1989;  Sec. 3(e) added by Acts 1989, 71st Leg., ch. 777, Sec. 2, eff. Sept. 1, 1989;  Sec. 8 added by Acts 2001, 77th Leg., ch. 990, Sec. 1, eff. Sept. 1, 2001.

Amended by:

Acts 2013, 83rd Leg., R.S., Ch. 679 (H.B. 2090), Sec. 1, eff. September 1, 2013.